IDA E. MILLER, APPELLANT, V. JOHN M. BRADFORD, APPELLEE.

FILED NOVEMBER 21, 1907.   No. 14,978.

Findings: EVIDENCE.   Evidence examined, and *held* sufficient to sustain the findings and judgment of the trial court.

APPEAL from the district court for Red Willow county: ROBERT C. ORR, JUDGE. *Affirmed.*

*Starr & Reeder,* for appellant.

*W. S. Morlan,* contra.

FAWCETT, C.

This is an appeal from a decree of the district court for Red Willow county, denying appellant's prayer for a reconveyance of certain lots in West McCook, and granting appellee's prayer for a decree quieting his title thereto. The only errors assigned by appellant are: "The judgment of the lower court is not sustained by the evidence. The deed from plaintiff to defendant was procured by fraud and was without any consideration whatever." The last two clauses being covered by the first, the only question for consideration is: Does the evidence sustain the findings and judgment of the court? The substance of plaintiff's contention is that she was the owner of a home con-

sisting of some deeded lots in West McCook; that defendant came to her and represented that he owned a section of land in Dundy county for which he could give a clear deed, and proposed to trade it to her for her McCook property; that she sent her husband with defendant to examine the Dundy county land; that defendant showed her husband a lot of good valley land which did not belong to him, and by such fraudulent conduct induced him to give his approval to the trade; that plaintiff and her husband did not know until after they had delivered their deed to defendant that defendant could not give them a deed to the Dundy county land, but could only give a relinquishment of the same; that immediately after receiving the relinquishment and discovering the true character of the paper, the husband demanded a return of the deed, which was refused; that, without plaintiff's knowledge, her husband filed defendant's relinquishment of the Dundy county land and entered the same in his own name; that plaintiff never received any consideration whatever for her McCook property; that her husband was illiterate and could not even read his own name; that they relied implicitly upon the representations made by defendant, and executed and delivered to him a deed to their McCook property; that the said representations of defendant were false and fraudulent, as defendant well knew, and were made for the purpose of cheating and defrauding plaintiff out of her home in McCook, of the value of about $1,000.

Defendant denies all allegations of fraud, and says that plaintiff and her husband knew all about the fact that he simply held the Dundy county land as a homestead entry under the Kinkaid act; that his Dundy county relinquishment was worth from $1,200 to $1,500; that the improvements on the land alone were worth from $300 to $350; that plaintiff's husband, prior to the execution of plaintiff's deed, was advised as to just what he would have to do with defendant's relinquishment in order to secure the land as a homestead; that the trade was made in good faith; that he had relinquished his homestead entry; that

plaintiff's husband had entered the lands, and that plaintiff and her husband took and still hold possession of the same.

After carefully reading every word of the evidence, we are unable to concur in appellant's view of it. To our minds it not only sustains the findings and judgment of the trial court, but so strongly negatives every contention of plaintiff, and sustains those of defendant, that a decree for plaintiff based thereon could not have been sustained.

Plaintiff contends that her husband was an illiterate man, who could not read or write. An examination of his signature to exhibit 9—the deed to the McCook property—which the witness Berry testifies he signed himself, shows that he not only can write, but that he writes an unusually good hand for a laboring man. In addition to this, his examination on both direct and cross-examination shows him to be a man of at least ordinary intelligence. Plaintiff and her husband were both upon the witness stand on the trial of the case, and the estimate placed upon their intelligence by the district court would be much better and more reliable than any opinion we might form from the reading of the record. Plaintiff's contention that neither she nor her husband knew that defendant did not own the Dundy county land, and could not make a deed thereto, is completely negatived by her own testimony and that of her husband. On page 2, while testifying as to her first interview with the defendant, she says: "I met him on the street, the first time I ever met him, he came up to me and said: 'I see you want to sell your house. Don't you want to trade it for a homestead?'" On page 22 plaintiff's husband in testifying says: "They was talking together. I didn't pay much attention to it, only the woman told me a man was up here and looked at the place, and he wants to give her a homestead for her place, and she wanted me to go up and look at it. I say: 'All right, I can go up and look at it.'" From this testimony of plaintiff and her husband, it will be seen that at the very beginning of negotiations defendant advised them that all he had to

trade was a homestead. On page 54, defendant testifies: "I told her I had a homestead filing in Dundy county, and that I would trade them my right for their house, and make a relinquishment, if they thought that would suit them. I asked if Mr. Miller had a homestead right, and she said he had. She said: 'A homestead is what Paul has been wanting for quite a while.' She said: 'He tried to get one when the new law came in, but could not get one.'" On page 55 he says: "She thought it would be just what he would want, and to go down and talk it over with him, and whatever he did would be all right with her." Then, in testifying as to the conversation with the husband, defendant says: "I told him I had a homestead I would like to trade for his house. I asked him if he had his homestead right yet, and he said he had, and I asked him if he wanted to file on a piece of land, and he said he would. That that is what he had been wanting to do for a year." Again, in testifying, on page 55, as to the conversation which he had with plaintiff and her husband together, defendant says: "I said: 'Do you understand the law? You have to live on it five years under this Kinkaid law before you can prove up and get a deed. It is not like the old law.' They said: 'Yes.' They understood that you had to live on it—that you couldn't commute under this law." The witness Green, apparently a perfectly disinterested witness, owned land adjoining the Dundy county land. When defendant and plaintiff's husband went to examine the land, they drove by Green's place, and invited Green to get in the buggy and ride over with them. Green corroborates defendant's testimony that defendant showed plaintiff's husband the right land. Green was an old acquaintance of plaintiff and her husband. After they had ridden over the land, Green and plaintiff's husband had a conversation, and, on page 45, Green says: "I said: 'Paul, you know that Bradford can't sell you this land. All he can sell you is the improvements.' And I said: 'He will relinquish.' And I said: 'You want to be there as soon as he relinquishes, because

anybody else has a right, and whoever comes along can file.' And he said: 'How much does it cost?' And I said: '$14.' We drove a short ways farther, and I asked him: 'Have you got your naturalization papers?' And he said: 'No, I left them at McCook.' I said: 'You will have to have them.' Then I repeated what I said before in regard to Bradford not being able to sell the land." The witness Hines, who examined the abstract for defendant when plaintiff's husband returned to Benkelman with the deed, testifies, on page 70: "I took the abstract and examined it, and I thought the title was straight except $53 taxes that were unsatisfied—unpaid—and Mr. Miller spoke up at that time and said: 'I have decided to trade our property for the relinquishment of your homestead, provided you pay the taxes.'" Mr. Hines prepared the relinquishment and took defendant's acknowledgment of it. Then defendant and Miller went to the office of Mr. Rickard, the county clerk, and requested him to fill out the necessary blanks for Miller to file upon the lands, so that they could send the filing to the government land office, with defendant's relinquishment, and thus prevent any other man from getting in ahead of him. The county clerk prepared the papers, and, on page 68, says: "I asked him if he was a native born citizen, and he said he was not. Then I asked him for his naturalization papers, or a copy of them. He said he didn't have them with him; that he would have to wait until he got back to McCook." On page 69 this question was asked Mr. Rickard, and this answer given: "Q. When in your presence at that time was there any talk had in regard to the homestead and how long he would have to live on it, or anything of that kind? A. He said that all he regretted about it was that he would have to live on it five years before he could get a deed to it." On page 81 Mr. Green, on being recalled, testifies to a conversation with plaintiff one evening in the latter part of July, which would be a month after the transaction complained of had taken place. He says: "She asked me how my wife liked it out there, and I told her it was pretty

lonesome for her, and she said: 'When I go up there I can visit her.'" Defendant also testifies, on page 61, that about a week after the making of the deal for the land plaintiff's husband came to him to buy a horse, and that at that interview nothing was said by Mr. Miller in regard to being dissatisfied with the trade. On page 42, plaintiff was recalled by the court, by whom she was interrogated, and testifies that after the trade the defendant lived in McCook; that the first time she ever spoke to defendant about the trade and made any complaint was, as near as she could remember, some time in August, when defendant brought a man up there to sell the place, when she offered to make a settlement with him, "and he wouldn't take it"; and that she never spoke to him about it after that. Defendant Bradford fixed the time of that interview as late as the month of October. But, even if plaintiff is right about the time, it shows that she lived in the same town with the defendant for almost two months after the making of the trade without ever making any complaint to him. She waited until defendant came to show the place to a prospective purchaser, and even then she does not say that she claimed that he had defrauded her, but simply says that she "offered to make a settlement with him, and he wouldn't take it," and that she never spoke to him about it after that. It is incredible that she would so tamely submit to such a fraud as she says was perpetrated upon her. She says she never has gone upon the land, but the evidence shows that her husband took possession of the land, cut the hay upon it, and has had possession of it, together with all of the improvements made by defendant, ever since the time of the trade. All of the testimony by defendant and his witnesses stands in the record without any attempt at contradiction. In the face of such a record, it is idle to claim that plaintiff executed her deed to defendant on the strength of representations by defendant that he could and would give her a deed to his lands. All of the parties fully understood just what they were doing, and the fact that plaintiff may have subsequently con-

cluded that she had made a bad bargain is not sufficient to entitle her to relief by a court of equity. While a court of equity will at all times lend its aid to the prevention of fraud, it will not permit parties to use it as the means of getting behind transactions entered into with their eyes open, simply because they would like to undo what they have done.

Aside from all this, the record does not disclose that plaintiff was overreached in her trade with defendant. She does not claim that her McCook property was worth more than $1,000, while the uncontradicted testimony of the defendant and the witnesses Green and Hines establishes the fact that the improvements upon the Dundy county land were worth in the neighborhood of $300, and that a relinquishment of the lands, including the improvements, was worth, at a fair estimate, at least $1,200. In addition to this, the testimony of Bradford and Hines shows that defendant was compelled to pay $53 back taxes upon the McCook property.

There is no merit in the contention that, because her husband entered the lands in his name, therefore she received no consideration for the McCook property. The property in McCook was the homestead of herself and husband, the title being in her. If she saw fit to exchange that for another homestead, the title to which must, under the homestead laws, be taken in the name of her husband, and her husband obtained that homestead, and the party with whom they were dealing parted with his right thereto, she cannot now be heard to say that she has received no consideration for the homestead with which she parted.

We deem further comment unnecessary. The findings and judgment of the trial court are clearly right, and we recommend that the judgment be affirmed.

AMES and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.